## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

            Plaintiff,

vs.                                                                          No. CR 06-2372 JB

RIGOBERTO BEJAR,

            Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Request for a Downward Adjustment of Sentence, filed June 12, 2007 (Doc. 29).  The Court held a sentencing hearing on June 18, 2007.  The primary issue is whether the Court should: (i) sustain Defendant Rigoberto Bejar's objections to the Pre-Sentence Report ("PSR") that the United States Probation Office ("USPO") prepared; and (ii) vary from the advisory Guidelines' sentence to a sentence of time served. Because, at the hearing, Bejar withdrew his objections to the PSR, the Court will overrule his objections as moot.  Because the Court believes that a sentence outside the advisory Guidelines' sentencing range is more appropriate for Bejar, the Court will vary from the Guidelines' range, but not to the extent Bejar requests.

### FACTUAL BACKGROUND

Bejar's criminal history consists of three serious juvenile convictions, three adult felony convictions, and two other arrests.  See PSR ¶¶ 20-25, at 7-12, disclosed April 30, 2007.  Bejar's adult felony convictions include a voluntary manslaughter conviction and a conviction for battery of a correction officer.  See id. ¶¶ 24-25, at 11-12.  Bejar illegally re-entered the United States after having been convicted of a serious crime of violence and after being ordered not to re-enter the

country.  See id. ¶ 4, at 2.

Bejar represents that he quit being a gang member when he was serving time in prison in the State of California, because his gang had ordered him to commit a murder.  See Defendant's Request for a Downward Adjustment of Sentence at 2, filed June 12, 2007 (Doc. 29)("Sentencing Memo").  Bejar asserts that, rather than commit a murder for which he would receive a life sentence, he had himself placed in protective confinement during the final two years of his sentence in California.  See id.  Bejar submits that, as a result of renouncing his gang affiliation, he is now under a continuing death threat from all gang members.  See id.  Bejar states that "[t]he code of the gangs is that once you are a member, if you leave a gang your life is forfeit."  Id.

Bejar further represents that he re-entered the United States only to help care for his father who had been seriously injured in an accident and was close to death.  See id. at 4.  Bejar maintains that, before returning to the United States to be with his father, he was working on the family farm and "doing well in Mexico."  Id. at 5.

Several letters have been submitted to the Court on Bejar's behalf.  Doug Brown states that he has seen "a real desire in [Bejar] to do the right thing and get his life back in order," and that he "truly believe[s] that [] Bejar has made a turn-around."  Letter from Doug Brown to the Court (dated June 14, 2007).  Robert Garcia states that Bejar is "a young man who was clear in acknowledging his failures from the past," that "he [has] sought transition," and that "he [had] made clear [] that the gang life he had escaped was something he absolutely wanted nothing to do with anymore. . . ."  Letter from Robert E. Garcia to the Court.  See Letter from Lonnie Theye to the Court (dated June 14, 2007); Letter from Fernando Bonilla to the Court (dated June 13, 2007).

**PROCEDURAL BACKGROUND**

On March 22, 2007, Bejar pled guilty to an indictment charging a violation of 8 U.S.C. §

1326(a) and (b), re-entry of a removed alien.  <u>See</u> Indictment, filed November 15, 2006 (Doc. 10); Plea Minute Sheet, filed March 22, 2007 (Doc. 25).  The USPO calculated Bejar's total-offense level as 21 and his criminal-history category as V, resulting in an advisory Guidelines' sentencing range of 70 to 87 months imprisonment.  <u>See</u> PSR at 17.  The USPO did not identify a basis for a departure or variance.  <u>See</u> PSR ¶ 47, at 17.  Paragraph 25 of the PSR states that Bejar was paroled on his state convictions for voluntary manslaughter and battery on November 29, 2004, and that his parole discharge date is November 29, 2007.  <u>See</u> <u>id.</u> ¶¶ 24-25, at 11-12.

Paragraph 26 of the PSR adds, pursuant to U.S.S.G. § 4A1.1(d), two points to Bejar's criminal history, because he allegedly re-entered the United States while under a criminal-justice sentence.  <u>See</u> PSR ¶ 26, at 12.  At the time the USPO prepared the PSR, the only document that it could provide Bejar's counsel to prove that he committed this offense while under a criminal justice sentence was a computer printout; the UPSO did not have an abstract of judgment in its possession. <u>See</u> Sentencing Memo at 1.

On June 13, 2007, the USPO contacted the California Department of Corrections ("CDC") and was informed that Bejar is still on parole for his voluntary manslaughter and battery convictions, and that his discharge date is November 29, 2007.  <u>See</u> Addendum to the PSR, dated June 14, 2007 ("Addendum").  A CDC printout confirming Bejar's current status is attached to the Addendum. <u>See</u> Addendum, Current Status Report for Bejar, Rigoberto, Lopez (dated June 13, 2007).

Bejar requests that the Court, pursuant to 18 U.S.C. § 3553(a) and <u>United States v. Booker</u>, 543 U.S. 220 (2005), grant him a downward adjustment from the applicable Guidelines' offense level to a lower offense level.  <u>See</u> Sentencing Memo at 1.  Bejar also requests a sentence of time served, arguing that he returned to the United States only because his father was ill and that he faces a serious danger in prison because he formerly belonged to a gang.  <u>See</u> <u>id.</u> at 2, 4-5.  Bejar has been

in custody since August 24, 2006, <u>see</u> PSR at 1, and to the knowledge of Assistant United States Attorney Kimberly A. Brawley and USPO Officer Thayenda White, Bejar has not been injured, <u>see</u> United States' Response to Defendant's Request for a Downward Adjustment of Sentence at 4, filed June 13, 2007 (Doc. 30)("Response").  A sentence of time served would amount to a sentence of approximately 10 months.

The United States opposes adjusting Bejar's sentence downward from the advisory Guidelines' sentencing range to a sentence of time served.  <u>See</u> Response at 2, 6.  The United States contends that the advisory Guidelines' sentence is presumed reasonable and that Bejar does not rebut that presumption using 18 U.S.C. § 3553(a)'s factors.  <u>See</u> Response at 2-4.  The United States leaves to the Court's discretion whether, given Bejar's circumstances, something other than a low-end sentence within the applicable advisory Guideline's sentencing range is appropriate to meet federal sentencing goals.  <u>See</u> Response at 6.

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in <u>United States v. Booker</u>, 543 U.S. 220 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  <u>Id.</u> at 245-46.  Under the new advisory Guidelines' scheme, "district courts have a freer hand in determining sentences."  <u>United States v. Trujillo-Terrazas</u>, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant."  <u>Id.</u>

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to

-4-

provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the

proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." Id. at 260-61. Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness. See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). First, the Tenth Circuit reviews the district court's consideration of the applicable Guidelines' range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable." Id. Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)." United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007).

On the other hand, criminal sentences that vary materially from the properly calculated Guidelines' sentencing range are not accorded a presumption of reasonableness. See United States v. Cage, 451 F.3d at 594-95. The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence. See United States v. Bishop, 469 F.3d 896, 907 (10th Cir.

2006).[1]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded Guidelines' sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  Rita v. United States, 127 S. Ct. at 2465.  More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence."  Id. at 2466 (emphasis in original).

## ANALYSIS

At the hearing, Bejar withdrew his objections to paragraphs 25 and 26 of the PSR, which discussed his parole status as of the time of his arrest for the offense for which he is being sentenced and that status' impact on his criminal history.  See Transcript of Hearing at 3:18-23 (Medrano)(taken June 18, 2007).[2]  Because Bejar withdrew his objections the Court will overrule them as moot.  The Court will limit its analysis to whether Bejar's sentence should be adjusted downward from the advisory Guidelines' sentence.

Bejar suggests that the Court should vary downward from the advisory Guidelines' sentence because of the nature and circumstances of the offense.  Specifically, Bejar submits that he returned

---

[1]In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach, i.e., the Tenth Circuit's understanding that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance," next term in United States v. Gall, No. 06-7949.  Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits).  The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the Guidelines' range.  Rita v. United States, 127 S. Ct. at 2467.

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-7-

to the United States only to be with his seriously injured father.  While the circumstances that Bejar and his father face are unfortunate, they are not so extraordinary as to set him materially apart from the majority of the defendants convicted of illegal re-entry after having been convicted of a felony. Regrettably, the Court sees similar hardship in many cases in which the defendant has a family. Without minimizing the significance of Bejar's concerns for his father's condition, the Court does not believe that this factor warrants a variance from Guidelines' sentence.  See United States v. Avalos-Marin, No. CR 06-1571 (Doc. 36), at *9 (D.N.M. July 26, 2007)(Browning, J.)(denying variance for a defendant who re-entered the United States to provide support for his nephew suffering from leukemia); United States v. Hernandez-Castillo, No. CR 06-1537, 2007 U.S. Dist. LEXIS 35230, at **27-28 (D.N.M. April 18, 2007)(Browning, J.)(denying a variance for a defendant who re-entered the United States to be with his severely ill wife); United States v. Trinidad-Toledo, No. CR 06-1646, 2007 U.S. Dist. LEXIS 9261, at *16 (D.N.M. January 16, 2007)(Browning, J.)(denying variance for defendant who re-entered the Untied States to earn money for treatment for his wife suffering from diabetes mellitus type II, arterial hypertension, kidney failure, and hypercholesterolemia).  The Court has generally held that illness of a family member -- either here in the United States or in Mexico -- is not sufficient, without more, to justify a downward departure or variance, because the scenario is so prevalent that, if the Court were to depart or vary every time the situation confronts it, the exception would swallow the rule.

The Court has searched the record to see if there is more in the record than illness in the family that would help justify a variance.  Bejar also contends that the Court should vary downward from the advisory Guidelines' sentence, because Bejar's leaving of his gang places his life in jeopardy while he is incarcerated. Bejar references studies regarding the operation of prison gangs to advance his arguments and support his request for the imposition of a time-served sentence.  The

Court does not believe, however, that the facts surrounding gang operation, and the possibility that Bejar could be at greater risk in prison than most prisoners justify a sentence of time served.  The Bureau of Prisons is accustomed to handling prisoners who previously belonged to gangs and is capable of ensuring Bejar's safety as much as it is of any former gang member.

While the Court does not believe that Bejar's transformation from gang life warrants a sentence of time served, it does believe that the changes in Bejar's life and involvement with gangs justify some variance from the advisory Guidelines' sentencing range.  After considering the changes in Bejar's life, and the considerable input of his family and friends, in the context of determining a sentence for Bejar, and, in particular, a sentence that would be sufficient but not greater than necessary to afford adequate deterrence and protect the public from further crimes of the defendant, see 18 U.S.C. § 3553(a)(2), the Court finds that a sentence of 60 months would be more reasonable than a Guidelines' sentence of 70 to 87 months.  The Court is convinced, by a preponderance of the evidence, that Bejar's change is real and permanent, and that the need for individual deterrence and the need to protect the public is reduced.  Nevertheless, while these factors counsel for a lower sentence, other factors, such as the seriousness of his criminal history, general deterrence, and the need to promote respect for the law weigh against varying to the extent Bejar requests.  Also, the Court is concerned that a considerable variance would introduce a disparity in sentences among similarly situated defendants that the sentencing court should avoid.  In sum, the Court believes that some variance is appropriate because of the changes in Bejar's life, because of his father's illness, and because of the dangers that he faces, but those elements do not justify the extent of variance he seeks.  The Court believes that a sentence of 60 months will reflect the seriousness of Bejar's offense, promote respect for the law, and provide just punishment for the offense better than a 70-month sentence or a time-served sentence would.

-9-

**IT IS ORDERED** that Defendant's Request for a Downward Adjustment of Sentence is granted in part and denied in part.  Defendant Rigoberto Bejar's objections to the PSR are overruled as moot.  While not varying from the advisory Guidelines' sentence as much as Bejar requests, the Court nonetheless grants Bejar a variance from the advisory Guidelines' sentencing range.  The Court varies from the Guidelines' sentencing range of 70 to 87 months and sentences Bejar to 60 months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
  Acting United States Attorney
Kimberly A. Brawley
  Assistant United States Attorney
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Phillip Medrano
  Assistant Federal Public Defender
Albuquerque, New Mexico

        *Attorney for the Defendant*

-10-